IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PENNY LEE POWELL, | ) | Civil No.: 6:14-cv-01899-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

Lisa R.J. Porter
JP Law P.C.
5200 S.W. Meadows Rd., Suite 150
Lake Oswego, OR 97035

  Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Nancy A. Mishalanie
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

  Attorneys for Defendant

FINDINGS & RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Penny Lee Powell ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision should be reversed and remanded for further proceedings.

## Procedural Background

Plaintiff filed her applications for DIB and SSI in August 2011, alleging disability beginning May 15, 2008. Tr. 8, 80. Plaintiff's claims were denied initially and on reconsideration, and a hearing was held before administrative law judge ("ALJ") Elizabeth Watson. ALJ Watson found Plaintiff not disabled in a decision dated August 30, 2013. Tr. 19. The decision became the final decision of the Commissioner on October 2, 2014, when the Appeals Council denied Plaintiff's second request for review. Tr. 1-3. Plaintiff now appeals to this Court for review of the Commissioner's final decision.

## Background

Born in March 1974, Plaintiff was 34 years old on the alleged onset date. Tr. 8, 80. Plaintiff graduated from high school, though she testified she was in an IEP program. Tr. 41, 297. Plaintiff indicated she passed her Certified Nursing Assistant ("CNA") course with assistance from a tutor. Tr. 42. Plaintiff has past relevant work as a CNA, and as a shipping and receiving clerk. Tr. 17, 63. Plaintiff alleges disability due to bipolar disorder, learning disability, obesity, and degenerative joint disease of the left knee. Tr. 80; Pl.'s Br. 20.

FINDINGS & RECOMMENDATION - 2

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If

FINDINGS & RECOMMENDATION - 3

the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a VE, or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

## The ALJ's Decision

At the first step of the disability analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 15, 2008, the alleged onset date of disability.

At the second step, the ALJ found plaintiff had the following severe impairments: morbid obesity; mild degenerative joint disease of the left knee; learning disorder; schizoaffective disorder; bipolar disorder with psychotic thinking; and posttraumatic stress disorder ("PTSD"). Tr. 10. The ALJ also noted the non-severe impairments of hypertension; hyperthyroidism; psoriasis; and obstructive sleep apnea. Tr. 11.

FINDINGS & RECOMMENDATION - 4

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Id.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity to:

> [P]erform medium work . . . except that she can frequently climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She can frequently balance and crouch. [Plaintiff] can occasionally stoop, kneel, and crawl . . . should avoid all exposure to operational control of moving machinery and unprotected heights . . . should avoid all exposure to hazardous machinery . . . can understand and carry out simple instructions. She is limited to performing simple, repetitive work . . . should have no work that requires travel outside the workplace . . . can have no interaction with the public and occasional interaction with coworkers and supervisors.

Tr. 12.

At the fourth step of the disability analysis, the ALJ found Plaintiff unable to perform her past relevant work. Tr. 17. At step five, the ALJ determined that, based on the testimony of the VE, there were a significant number of other jobs in the national economy which Plaintiff retained the capacity to perform. Tr. 18-19.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act from the application date of May 15, 2008, though the date of the decision, August 30, 2013. Tr. 19.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

FINDINGS & RECOMMENDATION - 5

423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff assigns the following errors to the ALJ's decision: (1) failure to provide sufficient reasons to discredit her symptom allegations; (2) failure to adequately evaluate and weigh medical opinion evidence; and, based on those errors, (3) formulating an erroneous RFC, rendering the step five findings invalid.

1. Plaintiff's Testimony

The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. Tr. 13. The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting

effect of the stated symptoms.[1] Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing

Lingenfelter v. Astrue, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine

whether the claimant has presented objective medical evidence of an underlying impairment

which could reasonably be expected to produce the pain or other symptoms alleged."

Lingenfelter, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence

of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms

only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d

1273, 1281 (9th Cir. 1996). However, a negative credibility finding made solely because the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence"

is legally insufficient. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales

for rejecting claimant testimony are upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359

F.3d 1190, 1197 (9th Cir. 2004).

    The ALJ found that the purported reason Plaintiff stopped working "raises a significant

credibility concern." Tr. 13. Specifically, the ALJ noted Plaintiff's employment did not end due

to functional limitations arising from her mental impairments, but rather from a physical

workplace injury she suffered in 2008, and which has since resolved. Id. The Commissioner

---

[1] The Court notes that, although the two-step process remains operative, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-3p, available at 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's decision was issued before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

asserts the ALJ's finding was valid because "the fact that Plaintiff stopped work for reasons other than her mental impairments is a sufficient basis to discount her claims that she cannot work due to mental impairments." Def.'s Br. 5. In support, the Commissioner cites *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), which upheld an ALJ's finding that a claimant was not credible because he did not leave his job due to an alleged impairment, *and* he waited nine months after being laid off before seeking medical treatment, *and* he failed to seek treatment despite allegations of severe pain. Id. at 828. Thus, *Bruton* does not stand for the proposition that a plaintiff's unrelated reason for stopping work *alone* is sufficient to wholly discount a claim of mental disability; further, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 824 (9th Cir. 1995). Here, the ALJ failed to address what specific testimony was not credible because Plaintiff left work for reasons unrelated to her alleged impairment. Id. Nonetheless, Bruton does hold that the impetus for leaving work is a valid *factor* in determining whether symptom testimony is credible in conjunction with other valid factors.

Similarly, the ALJ's second rationale in finding Plaintiff's symptom allegations not fully credible was that she was able to continue her employment despite her symptoms. Tr. 13. The ALJ found Plaintiff "has had a long history of psychiatric symptoms and worked with them." Id. Once again, the ALJ failed to point to specific testimony of record to impugn, in contravention of circuit case law. See, e.g., Lester, 81 F.3d at 824. Thus, the ALJ's rationale cannot be said to meet the rigorous clear-and-convincing legal threshold. Indeed, Plaintiff explained at hearing that she "had a lot of different jobs at a lot of different places because I never could keep a job for very long." Tr. 42. Plaintiff attributed her inability to maintain employment to her mood disorder, including panic attacks and violent outbursts, which often resulted in absenteeism. Tr.

FINDINGS & RECOMMENDATION - 8

43. Plaintiff explained that although she was injured on her last day of work, she did not return to her job because her prior absenteeism made her absence following her work injury the "final straw," such that she knew she would be terminated. Tr. 45-47. Despite Plaintiff's explanation, the ALJ made the finding that Plaintiff's stopped working solely due to her physical injury, referencing four exhibits which, upon careful review, contain no information about the reason she stopped working. Pl.'s Br. 20; see tr. 13, 244-51, 391-403, 552. As such, the ALJ failed to provide adequate reasoning to support her finding, which is legal error. Smolen, 80 F.3d at 1281.

The Commissioner argues Plaintiff provided inconsistent testimony about the reason she stopped working, and further that "the ability to maintain employment with a fair amount of success" during an alleged period of disability demonstrates alleged symptoms do not preclude work. Def.'s Br. 5 (quoting Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992) (internal quotation marks omitted)). First, as above, the ALJ did not find Plaintiff not credible because her testimony was inconsistent, but because it contravened her finding. Tr. 13. Because the ALJ did not invoke inconsistent testimony as a rationale, the Court may not rely upon it to uphold the ALJ's decision. Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (citing Connett v. Barnhart, 240 F.3d 871, 874 (9th Cir. 2003)).

Furthermore, Drouin did not hold that a Plaintiff's symptom testimony is not credible solely because the plaintiff did not lose her jobs on account of her alleged pain. There, the Ninth Circuit found Drouin's pain allegations were not credible because she did not lose her jobs due to pain, *and* she neither took medication nor underwent treatment for pain, *and* medical evidence indicated her alleged impairment was not associated with pain, *and* her activities of daily living ("ADLs"), *and* her observed behavior during her administrative hearing. Id. at 1258-59. Moreover, the ALJ in Drouin provided a specific symptom – pain – that was not fully credible

based on the litany of factors, whereas here, the ALJ failed to specify which alleged symptoms of Plaintiff's mental impairment was not fully credible, leaving her single rationale unsupported by specific, clear and convincing evidence. See id.; tr. 13. Accordingly, the finding should not be upheld. Smolen, 80 F.3d at 1281.

The ALJ further impugned Plaintiff's credibility based on the finding that her independent activities had increased with treatment. Tr. 13. In support, the ALJ noted Plaintiff was able to go shopping and visit a public pool. Id. In a chart note from July 2009, her provider reported that Plaintiff "has increased her independent activities – shopping, going to the pool and is feeling much improved." Tr. 730. Another chart note, from August 2009, indicated Plaintiff was "attending the public swimming pool for exercise," for "concerns that her weight will soon exceed 400 pounds." Tr. 706, 720 (duplicate record). However, these activities are relatively minimal, and moreover, the ALJ failed to identify how the activities impugn Plaintiff's symptom testimony. While Plaintiff's ability to occasionally grocery shop and attend a pool for exercise classes could bely testimony that she is unable to leave her house or function in public for any amount of time, her ability to occasionally partake in such minimal activities do not convincingly impugn her testimony that she would have frequent absences from work due to bipolar symptoms, or have difficulty getting along with coworkers and the public. Tr. 45-46, 47-48, 53. In fact, the ALJ appeared to credit Plaintiff's testimony in that regard, as the RFC includes a provision precluding *any* interaction with the public, despite her ability to partake in the aforementioned activities. Tr. 12.

Furthermore, neither activity cited by the ALJ is nearly as demanding as attending and succeeding in a competitive, full-time work environment. Accordingly, the rationales are legally insufficient. See, e.g., Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (critical differences

between [ADLs] and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons[,] and is not held to a minimum standard of performance[.]) (citations and internal ellipses omitted).

The ALJ also purported to accord diminished weight to Plaintiff's symptom testimony based on evidence of psychosocial improvement over the longitudinal record. Tr. 13. In support, the ALJ cited many instances in which Plaintiff's mental health providers noted her good mood, decreased anxiety, depression, suicidal ideation, sleep problems, and visual and auditory hallucinations. Tr. 13-14. Careful review of the record confirms the ALJ's findings: in 2009, Plaintiff repeatedly reported stable psychiatric symptoms and good mood. Tr. 730, 732, 734, 736. However, she also noted *increased* symptoms at two visits in 2009; although both instances appeared to be related to changes in her medication. Tr. 727, 737. In 2010, there are scant references to mental health issues from her primary provider, other than in March, when Plaintiff reported having a stable mood despite some visual hallucinations. Tr. 705. In 2011, Plaintiff often denied anxiety, depression, hallucinations, or sleep problems. Tr. 685, 689, 695, 701. However, one chart note from 2011 includes reported symptoms of depression, worthlessness, and anxiety. Tr. 697-98. In April of 2012, however, Plaintiff presented with complaints of increased anxiety and decreased need for sleep, related to bipolar disorder. Tr. 676-77. By June, Plaintiff reported increased anxiety, depression, and sleep disturbance, as well as strong auditory hallucinations, apparently instructing her to self-harm. Tr. 811-12. Plaintiff's primary care provider referred to the June 2012 episode as a "schizoaffective-schizophrenic break." Tr. 805. Following the addition of a new medication, Plaintiff reported "full resolution of all hallucinations/depression." Tr. 808.

Thus, while the ALJ correctly noted improvement in visits to providers in 2010, 2011, and 2012, her conclusion that "claimant did not have recurring mental health complaints" after 2009 is not accurate. Tr. 14. Similarly, the ALJ's statement that "2012 treatment notes do not show evidence of mental health worsening" is also not accurate, as Plaintiff suffered extreme symptoms in June of 2012. Tr. 14, 811-12. Although the Commissioner acknowledges Plaintiff's visits in March 2010 and February 2011 included reports of mental health symptoms, the Commissioner omitted from her factual recitation what the ALJ, during hearing, termed "a breakdown in 2012," and which was documented in the record as: "longstanding history of bipolar affective disorder currently starting to cycle[,] notes predominant depression[,] new onset of auditory hallucinations[,] multiple voices recommending that she hurt herself." Tr. 811. In her decision, the ALJ characterized the chart note as depicting "symptoms of anxiety and sleep difficulty," which fails to adequately describe the relevant record. Tr. 14. Additionally, it appears the ALJ failed to mention that in April 2012, Plaintiff reported new anxiety and sleep problems, in conjunction with "ongoing issues of bipolar affective disorder." Tr. 676-77. Accordingly, neither the ALJ nor the Commissioner provided an accurate assessment of the 2012 record, and therefore the position that Plaintiff's 2012 records "do not show worsening" is unsupported by the record.

Further, even assuming the ALJ had provided an accurate characterization of Plaintiff's 2012 mental health, she once again failed to identify, with any degree of specificity, testimony that was purportedly impugned. The Court is unable to locate any evidence that Plaintiff denied having periods of improvement, that her medications were often helpful, or that the incidences of worsening in 2010, 2011, and 2012 were undocumented, contradicted by other testimony, or otherwise unreliable. Accordingly, the Court should not uphold the Commissioner's credibility

assessment on the basis of "continual improvement;" that reading of the record does not withstand scrutiny, and therefore cannot be said to constitute a clear-and-convincing reason to discredit Plaintiff's symptom allegations. Burrell, 775 F.3d at 1139 (ALJ erred by finding "[c]laimant's self-reports were inconsistent in some unspecified way with her testimony at the hearing.").

Finally, the ALJ discredited Plaintiff's testimony because she applied for unemployment benefits, because "it is wholly inconsistent with her contention that a medical condition prevents her from working." Tr. 15. The ALJ further noted, "she has looked for employment during the period at issue casts further doubt on her self-reported symptoms." Id. The ALJ's reasoning fails to meet the requisite legal standard for two reasons. First, although Plaintiff applied for unemployment benefits, Plaintiff did not indicate that she was completely unable to work; rather, she testified that "I tried to find stuff that I could do, but I could never get hired anywhere because of my back past and my absenteeism." Tr. 47. Accordingly, the ALJ's finding that Plaintiff testified she is precluded from *any* work is not substantiated in the record. Second, as noted above, it is legally insufficient for the ALJ to make credibility findings without identifying specific symptom testimony in the record. Connett, 340 F.3d at 873-74. The ALJ's finding that seeking unemployment benefits "casts further doubt on her self-reported symptoms" is impermissibly vague; the ALJ must provide specific, clear and convincing reasons to discredit a claimant's testimony. Smolen, 80 F.3d at 1281.

The Commissioner cites Ghanim v. Colvin, 763 F.3d 1154 (9th Cir. 2014) for the proposition that "an assertion of the ability to work in any significant capacity could legitimately cast doubt on the veracity of Plaintiff's claims that she was unable to work." Def.'s Br. 8. In Ghanim, the Ninth Circuit further noted that "[c]ontinued receipt of unemployment benefits does

cast doubt on a claim of disability . . . ." Ghanim, 763 F.3d at 1165 (citing Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)). In Ghanim, however, although the plaintiff had applied for and received unemployment benefits, the Ninth Circuit ultimately determined that because the plaintiff voluntarily discontinued unemployment benefits, the ALJ's credibility finding was erroneous. Id. Moreover, the Ninth Circuit has also held that seeking employment does not necessarily undermine a plaintiff's credibility. See Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see also Frank v. Colvin, No. 6:14-cv-01434-AC, available at 2015 WL 6150852, at *4 (D.Or. Oct. 19, 2015). Thus, merely applying for, or receiving unemployment benefits for a short time, is not dispositive. Even if it were, however, the ALJ is still required to identify specific testimony of record which was belied by her willingness to seek other work. Because the ALJ failed to do so, the Court should not uphold the deficient finding. See Dodrill, 12 F.3d 915, 918 (9th Cir. 1993) (ALJ must do more than state general findings; the ALJ must state which testimony is not credible and specific evidence in support of the finding) (citation omitted).

Here, Plaintiff was forthcoming about applying for unemployment benefits, the type of job she sought, how long she received benefits, and why her benefits were discontinued. Tr. 47-49. She further explained why she felt she would ultimately have been unsuccessful in maintaining employment had she been able to procure it, despite the requirements of the unemployment program. Id. For these reasons, the ALJ's finding is not clear-and-convincing, and should not be upheld.

In sum, because none of the credibility rationales the ALJ provided abide by the required legal standards regarding specificity, they should not be upheld.

2. Medical Opinion Evidence

Plaintiff asserts the ALJ erred in evaluating the medical opinion evidence provided by treating and examining physicians. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs"). Tommasetti, 533 F.3d at 1040. Here, because the medical source opinions at issue were contradicted by State Agency physicians, the applicable legal standard is specific-and-legitimate. Murray, 722 F.2d at 502.

A. Christopher Wallis, PA-C

Certified Physician's Assistant ("PA") Christopher Wallis served as Plaintiff's mental health provider throughout the time period relevant to this case. Under the Social Security Administration guidelines, physician's assistants are considered "other medical sources," in

contrast to "acceptable medical sources." SSR 06-03p, <u>available at</u> 2006 WL 2329939, at *2.[2]

Although information from "other medical sources" cannot establish the existence of a medically

determinable impairment, "other medical source" opinions may be used to demonstrate the

severity of an impairment and how it affects functional abilities. <u>Id.</u> In evaluating the import of

an "other medical source" opinion, the following factors are relevant: (1) longitudinal duration

and frequency of treatment relationship; (2) consistency with other evidence; (3) supportability;

(4) quality of opinion's explanation; (5) source's area of expertise; and/or (6) any other relevant

factors. <u>Id.</u> at *4-5. PA Wallis provided two medical opinions: an April 2013 functional report,

and a single-sentence letter of May 23, 2013 indicating Plaintiff's "mental illness prevents her

from obtaining/maintaining gainful employment." Tr. 831, 841-45. The ALJ accorded the

opinions no weight, finding PA-C Wallis' conclusions were inconsistent with his own treatment

notes showing Plaintiff "did well overall" with medication management. Tr. 16-17. As a non-

acceptable source, the ALJ was required to provide reasons germane to PA Wallis to disregard

his opinion. <u>Turner</u>, 613 F.3d at 1224.

---

[2] Plaintiff argues that PA-C Wallis worked closely with and/or was supervised by Richard Evans, M.D., in support of her contention that PA Wallis' opinion should be evaluated as if it were the medical opinion of an "acceptable medical source," because PA Wallis indicated Dr. Evans supervised his treatment. Pl.s Br. 26-27; Pl.'s Reply 3; <u>see</u> tr. 845. However, a doctor's co-signature on a medical document no longer necessarily transforms a non-acceptable medical source opinion into an acceptable source opinion. <u>See</u> 65 Fed.Reg. 34950, *34952 (June 1, 2000). Rather, at best, the applicable standard is whether the non-acceptable source is "working closely with, and under the supervision of" an acceptable medical source. <u>Taylor v. Comm'r of Soc. Sec. Admin.</u>, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing <u>Gomez v. Chater</u>, 74 F.3d 967, 971 (9th Cir. 1996)). However, because the regulation relied upon by <u>Gomez</u> has been repealed, the precedential value of both <u>Gomez</u> and <u>Taylor</u> (which relied upon <u>Gomez</u>) has been called into doubt. <u>See</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 n.3 (9th Cir. 2012). Here, Dr. Evans did not co-sign PA Wallis' opinion, and there is no evidence that Dr. Evans ever treated Plaintiff or was otherwise aware of Plaintiff's individual medical picture. Accordingly, to the extent Plaintiff argues PA Wallis' opinion warrants greater deference because of Dr. Evans's purported close supervision, the argument lacks merit.

The records cited by the ALJ as showing Plaintiff "did well overall" consist of PA Wallis' chart notes from 2009 to 2013. As discussed previously, the majority of the treatment notes reflect that Plaintiff denied depression, anxiety, sleep problems, and hallucinations. Interspersed, however, are instances where Plaintiff endorsed increased anger, episodes of depression, high anxiety, visual and auditory hallucinations, and sleep problems. Tr. 676-77, 697-98, 703, 713, 737. Additionally, and unmentioned by the ALJ in his analysis of PA Wallis' opinion, are chart notes cataloguing an acute episode of bipolar manic cycling, including visual and auditory hallucinations, depression, suicidal ideation, and increased anxiety in June 2012, without changes in her medication. See tr. 808-813. Thus, although Plaintiff's debilitating symptoms did not persist indefinitely, they recurred on multiple occasions. As such, saying Plaintiff "did well overall" is a simplistic and vague description of a variable medical record. Moreover, the ALJ simply failed to identify how PA Wallis' opinion that Plaintiff would be unlikely to gain or maintain employment, and would "very frequently" have difficulty with concentration is internally inconsistent with his notes.

Additionally, even though the functional report PA Wallis completed included both physical and mental functional analyses, the ALJ appears to have ignored the mental component, which included PA Wallis' opinion that Plaintiff's anxiety, depression, and bipolar disorder interfere with her attention and concentration "very frequently," and that she would be "[i]ncapable of even 'low-stress' jobs." Tr. 842.

Turning to the factors set forth in SSR 06-03p, it is undisputed that PA Wallis was Plaintiff's primary care provider throughout the relevant period, and that his care was focused on Plaintiff's mental health issues. PA Wallis prescribed and monitored various medications throughout, closely monitored Plaintiff's status on a monthly basis, and also more frequently for

acute visits. See generally Exs. 3F; 19F; 21F; 22F. Thus, there can be little doubt PA Wallis' had the closest treatment relationship with Plaintiff of any physician of record.

Regarding consistency with other medical evidence, PA Wallis' opinion is generally consistent with other treating and examining mental health provider opinions of record. For example, Frank G. Lahman, Ph.D. provided a psychodiagnostic evaluation report in March 2010. Tr. 632-36. Dr. Lahman noted Plaintiff's symptoms wax and wane. Tr. 634. The doctor noted PA Wallis had been her primary care provider for more than five years, and "she feels quite comfortable with him." Tr. 635. The doctor noted "significant difficulty" with cognitive testing which he found consistent with Plaintiff's "history of special education and probably mood dysregulation." Tr. 635. Dr. Lahman agreed with PA Wallis that "traits of a personality disorder" were plausible. Id. Dr. Lahman felt Plaintiff more precisely reflected a diagnosis of Bipolar II disorder than Bipolar I disorder, but nevertheless, his conclusions were consistent with PA Wallis'. Id.

Gale Smolen, M.D. performed a one-time evaluation in June 2011. Dr. Smolen diagnosed Bipolar I disorder, prior methamphetamine dependence, PTSD, and "possible borderline intellectual functioning or even mild retardation." Dr. Smolen opined, "I do not think she could function with people on a mental basis." While those observations are consistent with PA Wallis', Dr. Smolen also indicated, "I think she is able to remember and understand without impairment and to concentrate and attend with no impairment," which is inconsistent with PA Wallis assessment of inability to concentrate. However, the remainder of the report was largely consistent with the observations and opinions set forth by PA-C Wallis; as Dr. Smolen noted Plaintiff's poor judgment, poor coping skills, GAF score of 48, psychotic thinking, mood disorder, energy spurts, and anger problems. Tr. 672-73.

FINDINGS & RECOMMENDATION - 18

Damon Tempey, Ph.D. treated Plaintiff twice in 2013. He diagnosed bipolar II disorder, and indicated a low GAF score of 35. Tr. 825. Dr. Tempey felt Plaintiff's ability to work a normal workweek was "very poor," and would have substantial difficulty getting along with the public and coworkers in the workplace. Tr. 826-27. He further assessed "marked limitations" in maintaining attention, attendance, sustaining an ordinary routine without special supervision, completing a workday and workweek without interruption from psychological symptoms, and social functioning. Tr. 828-29. Nevertheless, despite these substantially severe symptoms, Dr. Tempey also indicated that "appropriate psychotropic meds seem effective." Tr. 825. Overall, however, Dr. Tempey's opinion indicated even greater limitations than that assessed by PA Wallis, but was otherwise consistent.

State agency examiner Sandra Lundblad, Psy.D., generated a psychiatric review technique ("PRT") form following her review of the medical record in April 2010. She assessed bipolar II disorder and depression. Tr. 642. Dr. Lundblad indicated moderate limitations in social functioning and concentration, persistence, and pace. Tr. 16, 649.[3] The doctor concluded Plaintiff could not understand, remember, or complete complex tasks consistently, was limited in working

---

[3] The Commissioner argues Dr. Lundblad's "Rating of Functional Limitations," which denotes a moderate degree of limitation in social functioning and concentration, persistence, and pace is not relevant, other than for use at steps two and three. Def.'s Br. 11; tr. 649. In support, the Commissioner cites Rounds v. Colvin, 795 F.3d 1177, 1185-86 (9th Cir. 2015) for the proposition that "interpreting a checkbox to be an opinion is strained." Def.'s Br. 12. However, in Rounds, and the case cited in therein, the issue was whether a checkmark in the "Summary Conclusions" section of the Mental Residual Functional Capacity Assessment constituted part of the RFC. Id. Here, in contrast, the checkmarks at issue are within the PRT, which is not a RFC, but nonetheless denotes the severity of functional limitation in four areas. See Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a. In any event, for the narrow purpose of determining whether PA Wallis' medical opinion was consistent with other medical evidence, the PRT information is relevant, regardless of whether it technically constitutes a separate medical opinion. Moreover, the ALJ explicitly interpreted PRT's functional limitations as the doctor's opinion: "Dr. Lundblad assessed . . . moderate limitation with social engagement and concentration, persistence, or pace. I agree with Dr. Lundblad's analysis and the assigned [RFC] significantly aligns with her opinion." Tr. 16.

with the public, and not able to travel independently to unfamiliar locations. Tr. 655. Overall, Dr. Lundblad assessed less functional limitation than any of the other mental health physicians of record, although she assessed greater concentration limitations than Dr. Smolen.

Accordingly, PA Wallis' opinion is not clearly out-of-step with other medical opinions of record, and importantly, largely consistent with the opinions of treating and examining medical sources. SSR 06-03p (opinions of treating and examining physicians generally more probative than non-examining physicians). Also, PA Wallis' opinion is substantiated by his own chart notes, which reflect generally stable mental health with medication, but are interspersed with incidences of severe symptoms despite medication. Importantly, aside from Dr. Smolen's finding regarding concentration, no treating or examining medical provider contradicted PA Wallis' opinion that Plaintiff was unlikely to be successful in maintaining a regular full-time schedule due to absenteeism, would have limitations in concentration and focus, and would have limitations in terms of interpersonal interactions. As such, the record reflects PA Wallis' opinion is generally consistent with other medical evidence, and supported by it.

Continuing down the list of factors under SSR 06-03p, although PA Wallis' single-sentence 2013 opinion was cursory, his April 2013 functional report form provided a more thorough depiction of Plaintiff's impairments and ability to perform work-related activities. Tr. 831, 841-45. The final factor outlined in SSR 06-03p is whether the non-acceptable source opinion is within the source's specialty; however, the record includes no background information regarding PA Wallis' technical training as a mental health provider, other than his certification as a physician's assistant. Accordingly, the factor is neutral.

Although an ALJ is only required to provide a reason germane to a "non-acceptable medical source" to disregard testimony, the Ninth Circuit has both implicitly and explicitly

FINDINGS & RECOMMENDATION - 20

required that the germane reason be specific, and like all other administrative determinations, based on substantial evidence. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (the reasons provided to disregard lay witness testimony must be specific and germane to them) (citing Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)); see also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (one germane reason to reject lay witness testimony is that it conflicts with the medical evidence) (citation omitted). For example, although a familial relationship is generally "germane" to a witness, "[t]he [mere] fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." Smolen, 80 F.3d at 1288-89.[4] Similarly, the Ninth Circuit has held that an abstract financial interest in a plaintiff's receipt of benefits is not in itself sufficient to reject lay witness testimony. See Valentine v. Comm's Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (An ALJ may not rely solely on "characteristics common to all spouses" to discount a spouse's testimony.); see also Huffman v. Colvin, No. 1:14-cv-00861-AC, 2015 WL 5056029, at *8 (D.Or. Aug. 25, 2015) (unpublished).

Accordingly, while inconsistency with the medical record may be germane to lay witness testimony, simply stating the testimony is inconsistent, without more, does not provide sufficient information for a reviewing court to assess the adequacy of the ALJ's finding. Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (citing Treichler, 775 F.3d 1090, 1103 (9th Cir. 2014) (42 U.S.C. 405(g) requires ALJ to provide discussion of the evidence and reason or reasons upon which adverse decision is based)); see also Alaska Dep't of Envtl. Conserv. v. EPA, 540 U.S. 461, 497 (2004) (ALJ must provide sufficient reasoning such that the agency's path can reasonably be discerned).

---

[4] Nonetheless, a lay witness' close relationship to a plaintiff and possible pecuniary interest in a claim's outcome, when coupled with inconsistent medical evidence, has been found to be germane. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

As such, the ALJ's proffered reasons for according PA-C Wallis' opinion no weight were not specific, and as discussed above are not supported by the record as a whole. Therefore, the reasons cannot be said to be germane to him. Furthermore, as SSR 06-03p explains: "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source[.]'" SSR 06-03p at *5. Accordingly, because the ALJ failed to provide a specific, germane rationale for disregarding his opinion, and considering the factors set forth in SSR 06-03p, the Court should not uphold the ALJ's decision to accord Plaintiff's primary care provider's opinion no weight.

B. <u>Dr. Lahman</u>

Dr. Lahman provided a consultative examination in March 2010, focusing on Plaintiff's bipolar disorder. Tr. 632. The doctor noted that despite some improvement in mood stability with a new medication, Plaintiff nonetheless required "constant supervision" by her parents to monitor medication use and encourage normal daily activities. Tr. 635. He opined that Plaintiff would be unable to personally manage any benefits she might receive. <u>Id.</u> As noted above, Dr. Lahman's opinion was not inconsistent with that of PA-C Wallis.

In rejecting Dr. Lahman's medical opinion, the ALJ found the opinion was based heavily on Plaintiff's self-report, noting her limited credibility. Tr. 16. However, because the ALJ's credibility evaluation was not based on proper legal standards and supported by substantial evidence, the rationale is invalid. The ALJ also disregarded Dr. Lahman's opinion because it was "inconsistent with the longitudinal treatment history, which showed improvement with medications." Tr. 16. Yet again, although the record indicated periods of improvement, the ALJ disregarded instances where Plaintiff's symptoms waxed. Moreover, despite the purported

improvement, treating and examining providers nonetheless opined that Plaintiff was unlikely to successfully perform substantial gainful activity and/or would have significant functional limitations. See tr. 673, 823-30, 841-45. As such, the ALJ's rationales cannot be said to meet the requisite specific-and-legitimate legal standard. Murray, 722 F.2d at 502. The Court should not uphold the ALJ's evaluation of Dr. Lahman's opinion.

C. Dr. Tempey

As noted above, Dr. Tempey treated Plaintiff on two occasions in 2013 and completed a functional questionnaire worksheet generated by Plaintiff's attorney. Tr. 823. Dr. Tempey assessed marked limitations in a number of functional areas, opined Plaintiff would be unlikely to maintain a normal work pace in a full-time job, and indicated Plaintiff would likely miss work more than four times per month due to her mental impairments. Tr. 826-28. The ALJ accorded Dr. Tempey's opinion little weight for two reasons: (1) the doctor's limited treatment history, and (2) internal inconsistency. Tr. 17.

Plaintiff argues the ALJ erred to give little weight to Dr. Tempey's opinion based on a short history of treatment, while according great weight to state agency physicians who never treated or examined her. Pl.'s Br. 28. The Commissioner responds that unlike Dr. Tempey, the State Agency doctors were able to view Plaintiff's full medical history. Both arguments have merit; on one hand, the agency regulations favor the opinion of treating and examining doctors over non-treating, non-examining doctors. SSR 06-03p. On the other hand, it is apparent from Dr. Tempey's worksheet that he had not reviewed Plaintiff's medical history, as he indicated he would need to consult PA-C Wallis in order to determine the extent of her bipolar disorder history, and was unsure of the onset date of disability. Tr. 829. Thus, on balance, Dr. Tempey's opinion appears to provide a snapshot of Plaintiff's psychological status at the time the form was

completed in April 2013. Although Dr. Tempey may not have known Plaintiff's history of mental impairment, he nonetheless indicated his medical opinion regarding her status at that time in 2013. Accordingly, to the extent the opinion describes Plaintiff's status within the adjudicative period in 2013, the ALJ's first rationale for disregarding the opinion does not meet the specific-and-legitimate threshold.

The ALJ also indicated Dr. Tempey's opinion was tainted by internal inconsistency; specifically, his notation that regarding Plaintiff's bipolar impairment, "appropriate psychotropic meds seem effective." Tr. 825. Thus, the ALJ interpreted Dr. Tempey's statement as asserting that Plaintiff's medication is wholly effective in controlling her symptoms, but even though her medications effectively control her symptoms, she nevertheless suffers moderate to marked functional limitations due to bipolar symptoms. See tr. 823-830. The interpretation strains credibility, as it rests on the assumption the doctor's opinion is almost completely irrational. Considering the record as a whole, the most straightforward interpretation of Dr. Tempey's written remarks is that even though Plaintiff's bipolar medication is effective in controlling her bipolar disorder to a degree, she still has symptoms which substantially limit her functioning in key areas. Thus, while the Court acknowledges that Dr. Tempey did not include treatment notes, and apparently has not administered objective testing, the ALJ's interpretation of his opinion does not meet the requisite legal threshold.

In further support of the ALJ's assessment of Dr. Tempey's opinion, the Commissioner argues that because the doctor did not include objective testing and did not include treatment records, "his opinion could only be based on Plaintiff's [non-credible] allegations." Def.'s Br. 13 (citing Bray, 554 F.3d at 1228). However, because the ALJ did not invoke this reasoning in her decision, and because the ALJ's credibility assessment was erroneous, the Commissioner's

FINDINGS & RECOMMENDATION - 24

argument is unavailing. For all of the foregoing reasons, the ALJ's assessment of Dr. Tempey's medical opinion should not be upheld.

D. Physical Limitations

Plaintiff argues the ALJ improperly failed to incorporate physical limitations when formulating her RFC. As a threshold matter, the Commissioner asserts that Plaintiff waived any argument as to physical limitations by failing to assert them in her opening brief. Def.'s Br. 14. Plaintiff disagrees, asserting she adequately apprised the Court of her arguments in her Reply Brief. Pl.'s Reply 6. However, even assuming Plaintiff properly apprised the Court of her arguments in her Reply, those arguments do not set forth any specific allegations that would impact the RFC formulation. Plaintiff states the ALJ ignored "lumbar pain" and "ongoing nerve damage," but does not provide any argument regarding why the RFC was deficient. Such vague assignments of error are insufficient to reverse the ALJ. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929-30 (9th Cir. 2013). The only specific assignment of error Plaintiff presents regarding physical limitations is that "Dr. Eder found postural limitations regarding [Plaintiff's] left knee . . . ." Pl.'s Reply 6. However, the record reflects that the ALJ incorporated each of Dr. Eder's postural limitations (or greater limitations), into the RFC. Compare tr. 12 (Plaintiff can never climb ropes, ladders, or scaffolds; can frequently balance and crouch; and can occasionally stoop, kneel, and crawl.) with tr. 659 (RFC). In short, the ALJ did not err in incorporating physical limitations into the RFC.

3. Remand for Further Proceedings

Plaintiff argues that this case be remanded for an award of benefits, or alternatively, for further proceedings. When a court determines the Commissioner's ultimate disability decision includes legal error and/or is unsupported by substantial evidence, the court may affirm, modify,

or reverse the decision by the Commissioner "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). However, where it is clear from the record that an ALJ's error was "inconsequential" to the ultimate decision, the error is considered harmless and the decision must be upheld. Stout., 454 F.3d at 1055-56. Here, the ALJ failed to provide clear and convincing reasons to discredit Plaintiff's symptom allegations, failed to adequately assess the medical opinion evidence from Plaintiff's primary care provider, consulting psychologist Dr. Lahman, and treating psychologist Dr. Tempey. Because these legal errors potentially impact the validity of the ALJ's findings at steps four and five, the ALJ's decision should be reversed, and this case remanded.

    In determining whether to remand for further proceedings or for immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. Garrison, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" Id. at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir 2015) (citing Burrell, 775 F.3d at 1141).

The first prong of the remand inquiry is met based on the legal errors described above. However, the Court finds that the second prong is not met because the Commissioner has presented a number of issues that require further development of the record in order to conclusively arrive at a finding of disability. For example, although the ALJ did not adequately identify what symptom testimony was not credible, the Court questions whether Plaintiff would have been able to continue working in spite of her mental impairments, had she not suffered a physical injury in 2008. Thus, further investigation into the progression of Plaintiff's mental impairment prior to 2008, and the frequency and severity of symptoms after 2008 are appropriate.

Further development is also needed regarding whether Plaintiff continues to suffer disabling mental symptoms even when her providers indicated her medication is "effective," that she had "improved," and the import of PA Wallis' "excellent" prognosis. At least two key medical source opinions – those of PA Wallis and Dr. Tempey – are ambiguous about whether "improvement" and medication efficacy should be taken to mean that the functional limitations they assessed elsewhere in their opinions were resolved. In the best case scenario, these providers should be re-contacted to explain their written opinions. Finally, in the event the 2013 conclusions provided by PA-C Wallis and Dr. Tempey are accorded significant weight, and Plaintiff's functional limitations are found to preclude work, further proceedings are required to determine precisely when Plaintiff became disabled, and if that disability actually lasted or is expected to last for the statutory duration.

Because further proceedings are necessary, the Court does not reach the third step of the credit-as-true rule. Serious doubt remains as to whether Plaintiff is disabled within the meaning of the Act. See Treichler, 775 F.3d at 1107 (citing Garrison, 759 F.3d at 1021). Accordingly, the

Court recommends that this case be remanded to the agency for further investigation and explanation.

## Conclusion

A judgment should be entered REVERSING the Commissioner's decision and REMANDING this case for further proceedings.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due October 18, 2016. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of September, 2016.


_/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

FINDINGS & RECOMMENDATION - 28